UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KIMMEY WRIGHT,

              Plaintiff,

   -against-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

              Defendant.
------------------------------------------------------------X

**DECISION AND ORDER**
14-CV-1439 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

This is a review of a denial of Social Security Disability ("SSD") and Supplemental Security Income ("SSI") by Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff Kimmey Wright ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner which denied her application for SSD and SSI. Before the Court are motions for judgment on the pleadings from each party. For the reasons set forth below, the Commissioner's motion is GRANTED and Plaintiff's cross-motion is DENIED.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a forty-five year old woman who was born on February 2, 1968. Dkt. 15 ("R.") at 33. She graduated from high school. *Id.* at 33, 43. She has also reported to various medical professionals that she obtained a bachelor's degree. *Id.* at 28. She lives with her boyfriend and she reports cooking twice a week, doing some cleaning, laundry, and shopping as needed, and bathing and dressing herself daily. *Id.* at 28, 43, 60. Plaintiff testified that she does not go out often without her boyfriend because she feels nervous around people. *Id.* at 57-60. She also testified before the ALJ that she was self-employed as a day care worker/ babysitter in 2010 and 2011, during which time she took in three children from 7 A.M. to 5 P.M. *Id.* at 30, 44, 61, 174, 197. Plaintiff stated that she worked as at J.C. Penney's in 2009, as a store manager at Goodwill for two years before that, as a shift manager and worker at a fast food restaurant for

1

about a year, and as a cashier at Walmart for six months in 2000. *Id.* at 45-46, 49, 74-75; *see also* 168, 185, 197, 199. She reports that she was fired from her last job because she fought with her supervisor. *Id.* at 59-60.

Plaintiff "report[s] a history of glaucoma since 2011, anemia since childhood, [] anxiety and depression since 2000, as well as a history of diabetes since 2011, with no medications, only a diet she was advised to follow." *Id.* at 28, 66-67. She also alleges that she has tried to kill herself multiple times and that she harms herself "when she becomes upset." *Id.* at 28, 62-63. Plaintiff has only been hospitalized once, for anxiety in 2000 or 2001. *Id.* at 56. Plaintiff has at various times reported hearing voices, which have gotten progressively worse, as well as insomnia. *Id.* at 29. Dr. Frantz H. Lubin diagnosed Plaintiff with schizophenia; Dr. Jennifer Blitz diagnosed Plaintiff with a major depressive disorder with psychotic features and with a personality disorder with borderline features. *Id.* at 29, 30. Plaintiff has prescriptions for Risperdal, Ambien, and Xanax for the voices, insomnia, and depression, and she reports having been prescribed Alprazolam for anxiety and Citalopram and Latuda for depression in the past. *Id.* at 29, 30, 201, 261-62. Plaintiff has at various times reported that her medications caused the voices to subside. *Id.* at 29, 30, 51, 52, 276, 279.

On December 19, 2011, Plaintiff applied for SSD. *Id.* at 22. Three months later, on March 20, 2012, Plaintiff applied for SSI. *Id.* Both of Plaintiff's applications were initially denied on April 18, 2012. *Id.* at 88-89. As a result of the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 22, 99-101. Plaintiff received a hearing on her SSD and SSI applications in front of ALJ Jay L. Cohen ("the ALJ") on October 25, 2012. *Id.* at 22, 41-87. Plaintiff was represented by counsel. *Id.* at 22, 41, 110. She received an Unfavorable Notice of Decision on February 11, 2013. *Id.* at 1, 22-35. Plaintiff appealed that

decision on February 20, 2013. *Id.* at 17. The Appeals Council denied her request for review on February 6, 2014. *Id.* at 1-3.

On March 4, 2014, Plaintiff filed a complaint against the Commissioner pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner which denied her applications for SSD and SSI. Dkt 1 ("Compl"). The Commissioner filed a motion for judgment on the pleadings on September 11, 2014. Dkt. 12 ("C's Memo"). Plaintiff cross-moved for judgment on the pleadings that same day. Dkt. 16 ("P's Memo").

The Commissioner argues the Court should affirm the ALJ's determination that Plaintiff was not disabled because the ALJ properly evaluated the evidence and applied the correct legal standards to the facts. C's Memo at 14-25. Plaintiff, on the other hand, argues that the Court should remand the ALJ's decision for further adjudication at the agency level because (1) the ALJ violated the treating physician rule and (2) the vocational expert's ("VE") testimony did not reflect Plaintiff's residual functional capacity ("RFC"). P's Memo at 15-23.

The Court will address each issue raised by Plaintiff in turn.

## DISCUSSION

### I. Legal Standards

#### A. Standard of Review

When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005) (internal citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . ."); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks omitted) (citing *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not of the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v.*

*Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

### B. Statutory and Regulatory Standards

To qualify for SSD and SSI, the Social Security Act requires the claimant to prove she has a disability. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382c. "Disability" is defined in the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner must evaluate whether an individual qualifies as disabled using a five step process promulgated by the Social Security Administration ("SSA"):

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider h[er] disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform h[er] past work. Finally, if the claimant is unable to perform h[er] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111-12 (2d Cir. 2010) (brackets and ellipses in original) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four in the analysis. *Selian v. Astrue*, 708 F.3d 409, 418 (2d

5

Cir. 2013) (per curiam) (citations omitted). At step five, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant could perform even with her disability or disabilities. *Salmini*, 371 F. App'x at 112 (citation omitted); *see also Selian*, 708 F.3d at 418.

### C. The ALJ's Decision

On February 11, 2013, the ALJ denied Plaintiff's application for SSD and SSI. R. at 35. The ALJ followed the five-step SSA process. *Id.* at 22-35. At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity since the alleged onset date of November 20, 2009. *Id.* at 24; *see also* 157 (date of alleged onset), 63, 177. Specifically, the ALJ found Plaintiff earned over $13,000 dollars in the year 2010, "which rises above the substantial gainful activity threshold of $980 per month[,]" or $11,760 for 2010. *Id.* at 24; *see also id.* at 146, 152. The ALJ found no records of income earned after 2010, however, and so proceeded to step two of the analysis. *Id.* at 25.

At step two, the ALJ found that Plaintiff suffered from two severe impairments: "major depressive disorder with psychotic features[] and personality disorder with borderline features." *Id.* The ALJ also noted that Plaintiff suffered from two non-severe impairments: glaucoma and anemia. *Id.*

At step three, the ALJ determined that neither of Plaintiff's two severe impairments independently, nor the two together, met or medically equaled the severity of one of the listed impairments. *Id.* The ALJ first found "[Plaintiff] has at most mild restriction caused by her mental impairments[,]" noting that Plaintiff is able to cook, clean, shop, and do laundry as needed. *Id.* The ALJ further explained that Plaintiff's testimony about her restrictions was inconsistent with the record as a whole and that even Dr. Lubin, Plaintiff's alleged treating

6

physician, "indicated no marked impairment in activities of daily living[.]" *Id.* at 25-26. The ALJ opined that Plaintiff has "moderate difficulties" in social functioning based on the opinions of a consultative examiner and Dr. Lubin, and moderate difficulties "[w]ith regard to concentration, persistence[,] or pace." *Id.* at 26. The ALJ did not credit Dr. Lubin's finding that Plaintiff had "marked difficulties in social functioning" or his finding that Plaintiff had "marked deficiencies in concentration, persistence, or pace" because "he did not provide any explanation for how those symptoms would lead to such an inability" and "no results from any clinical testing of attention or concentration were provided," respectively. *Id.* The ALJ also found that Plaintiff had suffered no instances of decompensation. *Id.*

At step four, the ALJ determined that Plaintiff had the RFC to perform "the full range of medium work as defined in 20 C.F.R. § 404.1567(c) . . . limit[ed] [] to simple, routine, repetitive work with limited contact with supervisors and coworkers, and no contact with the public." *Id.* at 27. The ALJ discussed in detail the findings of Dr. Herman, a consultative psychiatrist, and Dr. Lubin, both of whom evaluated Plaintiff's mental impairments in 2012. *Id.* at 28-29. In regards to Dr. Lubin, the ALJ opined that the medical record did not support "such severe symptoms" as Dr. Lubin recorded in his medical report, and further that Dr. Lubin's report was devoid of explanation, documentation, or examples of his findings. *Id.* at 29-30. The ALJ also described the testimony and cross-examination of Dr. Blitz who spoke at Plaintiff's hearing. *Id.* at 30. Dr. Blitz opined that Dr. Lubin's testimony of schizophrenia seemed unsupported by the evidence, but that the evidence did support a diagnosis of a major depressive disorder with psychotic features and of a personality disorder with borderline features. *Id.* Lastly, the ALJ discussed Plaintiff's testimony at the hearing, which he found to be "internally inconsistent," as well as "not consistent with the rest of her testimony." *Id.* at 31. The ALJ ultimately determined

that, while the diagnosed "impairments could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's testimony regarding "intensity, persistence[,] and limiting effects" was "not entirely credible[.]" *Id.* at 31-32. Therefore, ALJ determined that the RFC noted above was supported by the opinions of Drs. Blitz, Herman, Fong, and Graber[1], whose medical opinions the ALJ determined deserved greater weight than that of Dr. Lubin and the Plaintiff's own testimony. *Id.* at 33. Nonetheless, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.*

Lastly, at step five, the ALJ found that there were "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Specifically, based on the testimony of a Vocational Expert ("VE"), the ALJ determined Plaintiff could perform the jobs of warehouse worker, office cleaner, kitchen worker, non-postal mail clerk, file clerk, assembler, table worker, sedentary assembler, and sorter. *Id.* at 34. Thus, the ALJ held that Plaintiff had not been under a disability from November 20, 2009 to February 11, 2013, the date of his decision. *Id.* at 35.

## II. Analysis

Plaintiff argues that the ALJ erred in denying Plaintiff's application for SSD and SSI because (1) the ALJ violated the treating physician rule and (2) the vocational expert's ("VE") testimony did not reflect Plaintiff's RFC. P's Memo at 15-23. The Court will address each issue in turn.

---

[1] Drs. Fong and Graber were examining sources who provided opinions as to Plaintiff's physical capacity in relation to her non-severe impairments of glaucoma and anemia. R. at 25, 33. The ALJ's assessment of Plaintiff's physical capacity is not at issue in this appeal, and no issue has been raised regarding the opinions of Dr. Fong or Dr. Graber. P's Memo at 4, 8, 11-24.

8

### A. Treating Physician Rule

Plaintiff first challenges the denial of SSD and SSI benefits on the basis that the ALJ violated the treating physician rule by failing to give controlling weight to the conclusions of her treating physician, Dr. Lubin. P's Memo at 15-20.

"The SSA recognizes a treating physician rule of deference to the views of the physician who had engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). "The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian*, 708 F.3d at 418 (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *Green-Younger*, 335 F.3d at 106-07); *see also* 20 C.F.R. §404.1527(c)(2) (The opinions of a treating source will only be given controlling weight by the reviewing ALJ if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."); *Burgess*, 537 F.3d at 128 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)) ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts.") (ellipses in original).

"In order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. § 404.1527(c)(2) (setting out the factors for the ALJ to consider in determining how much weight a treating

9

physician's opinion should receive: the "length of treatment relationship and the frequency of examination," "[n]ature and extent of the treatment relationship," "[s]upportability," [c]onsistency . . . with the record as a whole," "[s]pecialization," and "any factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Failure on the part of the ALJ to provide "good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted) (citing *Snell*, 177 F.3d at 133); *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Plaintiff and the Commissioner disagree about whether Dr. Lubin qualifies as Plaintiff's treating physician – Plaintiff alleges that Dr. Lubin is her treating physician, while the Commissioner supports the ALJ's finding that Dr. Lubin was "an examining source with an appropriate area of expertise, and is a treating source to some extent[.]" R. at 32; P's Memo at 15; C's Memo at 18. The Court, however, need not determine whether Dr. Lubin is a treating physician because the ALJ's analysis provides sufficient good reasons to give only "very limited weight" to his testimony, whether he is Plaintiff's treating physician or not. R. at 29-33.

At multiple points throughout his opinion, the ALJ opines that Dr. Lubin's opinions are unsupported by the medical evidence and unexplained by Dr. Lubin. *Id.* at 29-33. In explaining his ultimate decision to afford Dr. Lubin's opinion "very limited weight," the ALJ provides the following detailed explanation:

> Very limited weight can be accorded to the opinions of Dr. Lubin, as although he is an examining source with an appropriate area of expertise, and is a treating

source to some extent, he only appears to have actually met the claimant for treatment on [four] occasions, after the initial three [from] which he completed his assessment. Dr. Lubin's treatment notes do not indicate such severe symptoms as indicated in his assessment, and instead indicate that after [Plaintiff] began treatment in mid-June, 2012, and had her medication changed in mid-July, she reported by the following week that her auditory hallucinations had subsided, and her medications were thereafter continued with the reduced Risperdal amount and no further change in medication or dosage. Dr. Lupin's [sic] diagnosis of schizophrenia does not appear to be based on anything other than [Plaintiff's] report of hearing voices, which subsided with medications generally prescribed for depression, rather than for schizophrenia, and with no indication as to any other schizophrenic symptoms or basis for such a diagnosis. Further, Dr. Lupin's [sic] opinions of marked limitations in social functioning and in concentration, persistence, or pace are entirely unsupported by any clinical findings; and likewise, although he indicated that [Plaintiff] has experienced episodes of deterioration or decompensation of extended duration, no such episodes are provided, nor documented in the record. The undersigned further notes that Dr. Blitz's testimony at the hearing regarding the lack of support for Dr. Lupin's [sic] indications of listing-level impairments is consistent with the medical record, as opposed to Dr. Lupin's [sic] own diagnoses and opinions, which are not, in fact, supported by his own clinical findings, nor consistent with the medical evidence of record as a whole.

*Id.* at 32-33.

In the quoted paragraph, the ALJ addresses all of the factors identified by the Second Circuit as necessary to discuss when determining not to give controlling weight to a treating physician's report. *See Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ identified Dr. Lubin as an expert and noted the specific number of times that Plaintiff saw Dr. Lubin, as well as the time period during with those visits occurred (from June 2012 to the present). *Id.* at 32. The ALJ then discussed at some length the limited medical evidence supporting Dr. Lubin's position and the inconsistency of Dr. Lubin's testimony with that of Dr. Herman and Dr. Blitz. *Id.* Even if Dr. Lubin were Plaintiff's treating physician, the ALJ nonetheless provided good reasons to give only "very limited weight" to Dr. Lubin's unsupported testimony.

Further, the ALJ properly evaluated Dr. Lubin's report in light of the other medical evidence before him. Dr. Lubin's report was "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32 (internal citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). It was therefore appropriate for the ALJ to give it "very limited weight" in assessing the Plaintiff's RFC. R. at 32. For ease of explanation, the chart below provides a summary:

| Dr. Lubin | In October 2012, diagnosed Plaintiff with schizophrenia based on a clinical finding of "manifest auditory hallucination." R. at 268. |
|---|---|
| | Checked the following boxes in October 2012: Plaintiff's medical condition "lasted or can be expected to last at least twelve months"; found Plaintiff suffers "[m]otor tensions", "[a]utonomic hyperactivity", "[a]pprehensive expectation", "persistent irrational fear", "[r]ecurrent severe panic attacks", "[r]ecurrent obsessions or compulsions", "[r]ecurrent and intrusive recollections of a traumatic experience", and "[s]ymptoms resulting in complete inability to function independently outside the area of one's home." *Id.* at 269-70. |
| | Checked box for "[d]epressive syndrome characterized by": "[a]nhedonia or pervasive loss of interest in almost all activities", "[a]ppetite disturbance with change in weight", "[s]leep disturbance", "[p]sychomotor agitation or retardation", "[d]ecreased energy", and "[h]allucination, delusions, or paranoid thinking". *Id.* at 271. |
| | Indicated Plaintiff had no marked restriction of activities of daily living in October 2012. *Id.* at 273. Changed to "Yes" "Due to patient paranoia she is unable to function her low self [e]steem does not help" in April 2013. *Id.* at 290. |
| | Indicated Plaintiff had marked difficulties maintaining social functioning, explaining "[Plaintiff] low self [e]steem and paranoid ideation make her unable [to] maintain[] social functioning" and "[Plaintiff] feels people are thinking bad about her." *Id.* at 273, 290. |
| | Indicated marked deficiencies of concentration, persistence, or pace, explaining "[Plaintiff's] attention span and concentration [are] poor due to her mental condition" and "because of her anxiety." *Id.* at 273, 290. |
| | Indicated Plaintiff suffered repeated episodes of decompensation in October 2012, explaining "[Plaintiff] is unable to perform in a work setting due to her |

12

| | |
|---|---|
| | paranoia, auditory hallucinations[,] and low self [e]steem." *Id.* at 273. Changed check box to "No" in April 2013. *Id.* at 290.<br><br>Indicated Plaintiff could travel alone by bus and by subway on a daily basis in April 2013. *Id.* at 291. |
| Dr. Herman | "The claimant was found to be cooperative, with adequate social skills." R. at 234.<br><br>"THOUGHT PROCESSES: Coherent and goal directed, with no evidence of hallucinations, delusions[,] or paranoia. AFFECT: somewhat variable, at times somewhat irritab[le] and at other times less so. [Plaintiff] appeared to have some difficulty with the nature of some of the questions and talking about uncomfortable aspects of herself. MOOD: neutral. SENSORIUM: Clear. ORIENTATION: Oriented x3. ATTENTION AND CONCENTRATION: Somewhat below average. She was unable to perform serial 3s. RECENT AND REMOTE MEMORY SKILLS: Recent memory skills were mixed. [Plaintiff] was able to recall 5 digits forward and 3 digits backward. Remote memory skills were below average. She was able to recall 1 out of 3 objects after five minutes. COGNITIVE FUNCTIONING: Intellectual functioning appears average." *Id.* at 234-35.<br><br>"MEDICAL SOURCE STATEMENT: From a psychiatric/psychological perspective, [Plaintiff] appears capable of the following vocational functions: following and understanding simple directions and instructions, performing simple tasks, maintaining attention and concentration, learning new simple tasks, and making appropriate simple work-related decisions. She may have difficulty maintaining a regular schedule, performing complex tasks, relating adequately with others and appropriately dealing with stress. Results of the present evaluation appear to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis to the extent that all vocational functioning would be precluded." *Id.* at 235. |
| Dr. Blitz | "She doesn't meet the criteria for a diagnosis of schizophrenia. She does[,] however, meet the criteria for a diagnosis of major depressive disorder with psychotic features . . . [a]s well as personality disorder, not otherwise specified with borderline features." R. at 69.<br><br>"[T]he record is inconsistent. Dr. Lubin, his opinion is that [Plaintiff] has marked impairments in social functioning and in sustained concentration, persistence, and pace. But other than [Plaintiff] experiencing auditory hallucinations and insomnia, which are documented in his notes, . . . there's no evidence of those marked impairments in the treatment notes." *Id.* at 69-70.<br><br>"I would say[,] based on her testimony, she would have difficulty relating with others. She indicates that she's fearful and has some paranoid ideations, |

| | so she would probably be limited to very limited contact with others . . . I can't specify, I can't be more specific because the evidence just isn't there." *Id.* at 70.<br><br>"She does also indicate she's forgetful, so I do believe that the record supports her being limited to simple, routine, repetitive tasks." *Id.* at 71. |
|---|---|

From the above review of the medical evidence, it is evident that only Dr. Lubin opined that Plaintiff could not perform any work. Both of the other mental health physicians submitted opinions consistent with the ability of Plaintiff to perform medium work limited to simple, routine, repetitive work with limited contact with coworkers and no contact with the public. "Given the [inconsistency of Dr. Lubin's findings], the ALJ was free to discount [Dr. Lubin's] opinions in favor of a broader view of the medical evidence, notwithstanding [Dr. Lubin's alleged] status as the 'treating physician.'" *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008). Accordingly, Plaintiff's motion for judgment on the pleadings on the basis of a violation of the treating physician rule must be DENIED. The Commissioner's motion on this issue is GRANTED.

### B. VE Testimony

Plaintiff also challenges the denial of SSD and SSI benefits on the basis that the VE's testimony does not reflect Plaintiff's RFC and therefore cannot be cited as a basis to deny her benefits. P's Memo at 20-23.

"The ALJ may call upon a vocational expert to obtain evidence needed to determine whether the claimant can still perform her past relevant work." *Williams v. Colvin*, 13-CV-5431, 2015 WL 1223789, at *12 (S.D.N.Y. Mar. 17, 2015) (Ellis, Mag. J.) (citation omitted). "[A] vocational expert also may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitation[s] imposed by the claimant's

medical impairments can meet the demands of her previous work." *Id.* (internal quotation marks and citation omitted). As a general rule, however, a VE's testimony "'is only useful if it addresses whether the particular claimant, with [her] limitations and capabilities, can realistically perform a particular job.'" *Id.* (quoting *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).

In this case, the VE testified at Plaintiff's hearing before the ALJ. R. at 75. The VE first opined that Plaintiff could not perform her past work, given her limitations. *Id.* at 76. The VE then testified that a hypothetical person with Plaintiff's age, education, and work history who could perform medium, simple, routine, repetitive work with limited contact with coworkers and none with the public would be able to find work in the national or regional economy. *Id.* at 76-77. Specifically, the VE identified warehouse worker, office cleaner, and kitchen worker as jobs that Plaintiff could perform. *Id.* at 77-78. When the hypothetical was changed to light work rather than medium work, the VE identified non-postal mail worker, file clerk, and assembler as positions Plaintiff could hold. *Id.* at 78-80. Lastly, when the hypothetical was changed to sedentary work, the VE identified table worker, sedentary assembler, and sorter as jobs Plaintiff could perform. *Id.* at 80-81. When asked whether Plaintiff could perform any of this work if all of Plaintiff's testimony was credited or if Dr. Lubin's testimony was given great weight, the VE stated there would be no work Plaintiff could perform. *Id.* at 82-83.

Plaintiff, it seems, seeks to re-litigate the question of the value of Dr. Lubin's testimony through attacking the VE's testimony as not based on a correct RFC. However, the VE's testimony is based on all of the evidence about Plaintiff's mental health that the ALJ determined was credible, namely, the testimony of Dr. Herman and Dr. Blitz. *See supra* II.A. While Plaintiff's RFC would doubtless have been different had the testimony of Dr. Lubin and of Plaintiff been given substantial or even some meaningful weight, such testimony was determined

to be incredible by the ALJ based on the other medical evidence presented and internal inconsistencies, respectively. *See, e.g.*, R. at 82-83. The ALJ provided the VE with the correct RFC given the ALJ's evaluation of the evidence on the record, and the VE appropriately based her testimony on the RFC provided by the ALJ. *Id.* at 76-82.

This Court has already determined that the ALJ properly evaluated the medical evidence on the record and appropriately gave little weight to Dr. Lubin's findings. Further, based on the Court's assessment of the medical record, the RFC on which the VE based her testimony was the correct one. Plaintiff's motion for judgment on the pleadings is therefore DENIED, and the Commissioner's motion on this issue is GRANTED.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings is DENIED, and Commissioner's motion for judgment on the pleadings is GRANTED. This matter is hereby dismissed. The Clerk of Court is respectfully instructed to close this case.

SO ORDERED.
s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April ___, 2015
Brooklyn, New York

16